**In re James Gail WILSON, a/k/a Gail Wilson, Debtor.**

**Floyd D. HOLDER, Jr., Trustee, Plaintiff,**

**v.**

**James Gail WILSON, a/k/a Gail Wilson, Virginia Waynell Evans Wilson and the United States of America and the Internal Revenue Service, Defendants.**

**Bankruptcy No. 582–00110. Adv. No. 584–5031.**

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

Jan. 24, 1985.

James V. Hoeffner, Lubbock, Tex., for debtor.

Floyd D. Holder, Jr., Lubbock, Tex., Trustee.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

Floyd D. Holder, Jr., Trustee, filed complaint to determine the validity, priority or extent of lien or other interest which the debtor, James Gail Wilson, his former wife, Virginia Waynell Evans Wilson, the Small Business Administration, ("SBA") or Internal Revenue Service ("IRS") might have in and to an income tax refund in his possession. The following summary constitutes findings of fact and conclusions of law.

James Gail Wilson, the debtor, filed petition for order for relief under Chapter 7 of Title 11, United States Code, on July 12, 1982. Approximately two weeks before filing the bankruptcy petition he had applied for an income tax refund based on losses in 1981 with carrybacks to the tax years 1974, 1975, 1977 and 1978. He did not mention the claimed refund in his bankruptcy petition. He was discharged of all dischargeable debts in November 1982.

In June or July 1983, the debtor received four refund checks from Internal Revenue Service in the respective amounts of $11,701.86, $1,168.08, $1,980.86, and $429.18, for total refund of $15,279.98. Those checks were made payable jointly to the debtor and his former wife. He did not report receipt of those checks to the trustee and he did not advise his former wife of receipt of those checks. He endorsed the name of his former wife on each check and cashed them.

On a date not reflected by the record Internal Revenue Service mailed a refund check to the trustee of debtor's estate in the sum of $17,283.42.[1] The trustee deposited that tax refund in the estate account. However, in about October 1983 Internal Revenue Service discovered that it had made duplicate payments of the same refund ... one to the debtor and one to the trustee. On October 19, 1983, it made demand upon the debtor to return the payment.[2] Further, IRS levied on the estate account which the trustee had opened, contending that the $17,283.42 refund was erroneously paid to the trustee and should be returned to IRS.

The debtor's former wife learned that the trustee had received a tax refund and she demanded that one-half of the refund be paid over to her. Further, Small Business Administration made demand upon the trustee, contending that it was a creditor of the debtor and of his former wife and that it is entitled to setoff any monies owed to the debtor by the United States against its debt. The trustee filed this complaint for resolution of the respective claims of IRS, SBA and the former wife of the debtor.

■ There can be little argument that tax refunds to which a debtor might be entitled which are based on prepetition earnings or losses are property of the estate. *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974); *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). In *Segal* the Court was concerned with whether a loss carryback refund claim was property of the estate within the meaning of § 70a(5) of the Bankruptcy Act of 1898. The Court concluded that the loss carryback refund claim was sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered "fresh start" that it should be regarded as "property" under § 70(a)(5). Congress has codified the holding of *Segal*, in effect, by enacting § 346(i)(1) of the Bankruptcy Code which provides in pertinent part:

"In a case under Chapter 7 or 11 of this title concerning an individual, the estate shall succeed to the debtor's tax attrib-

---

1. Apparently the difference in the amount of the refund check received by the debtor and that received by the trustee is that the latter check included interest.

2. Curiously the notice demanded return of $13,236.16 instead of $15,279.98 which had been paid to the debtor. The demand indicated that the check was for $13,236.16 and advised the debtor that if refund was promptly made no interest would be charged. However, there is no combination of the four checks which the debtor actually received which totals $13,236.16.

utes, including ___ (C) any loss carry-over."

Congress subsequently enacted the Bankruptcy Tax Act of 1980 which revised various sections of the Internal Revenue Code. Section 1398(g) of the Internal Revenue Code now corresponds with § 346(i)(1) of the Code as follows:

"The estate shall succeed to and take into account the following items (determined as of the first day of the debtor's taxable year in which the case commences) of the debtor ___ (1) the net operating loss carryover determined under Section 172."

█ Therefore it is apparent that the tax refund based on prepetition losses was property of the estate. Internal Revenue Service was included on the mailing matrix and received notice of the pending bankruptcy proceedings. Internal Revenue Service is an entity under § 542(a) which was in possession, custody, or control of property that the trustee may use, sell or lease and it was required to deliver the refund check to the trustee. It did in fact make payment of the refund to the trustee. The fact that payment also was made to the debtor, individually, was the error of IRS and can in no way be blamed on the trustee. The contention by IRS that the refund held by the trustee should be returned to it is denied without prejudice to the right of IRS to pursue any of its proper collection remedies against the individual debtor, James Gail Wilson.

█ Small Business Administration contends that James Gail Wilson and Virginia Waynell Evans Wilson, jointly and severally, are indebted to it on account of a note in the principal sum of $94,100.00 executed by them on July 16, 1980. Further it contends that Small Business Administration and the Department of the Treasury, Internal Revenue Service, each is an instrumentality and agency of the United States and that Small Business Administration should be permitted to setoff the IRS refund against its pre-petition debt. It has supported its claim with no authorities except for its contention that § 553 permits the setoff of mutual debts. I cannot find under the circumstances of this case that a mutual debt in fact exists which can be setoff by SBA. Whether SBA can properly setoff its debt against other monies which are owed to a debtor, but which have not been paid out, is not the subject of this memorandum. In this case the Treasurer had already paid the monies to the trustee before SBA made its setoff claim. Any privilege to setoff was waived when that right was not timely asserted by SBA. *See In re Archer*, 34 B.R. 28, 29 (Bkrtcy.N.D.Tex.1983).

The claim of Virginia Waynell Evans Wilson, the former wife of the debtor, that she is entitled to a portion of the refund is somewhat troublesome. She and the debtor had married in 1963 and were divorced on May 12, 1981. In the divorce decree the husband, James Gail Wilson, was ordered to pay "all of the debts and obligations listed in the inventory and appraisement ... and to indemnify and hold petitioner harmless from any failure to so discharge such debts and obligations." At all times prior to 1982 which are relevant to this memorandum the debtor had been a farmer in Floyd County, Texas. After the 1981 crop year he terminated his farming operations, sold all of his equipment at a farm sale in February 1982, and became employed by an insurance company as a crop adjuster. His losses after the 1981 crop year were such that he based a claim for refund back to those four years in the 1970's when he had paid taxes. He was married to the former wife during those years when taxes were paid and was married to her a portion of the 1981 crop year. However, the actual losses arguably occurred subsequent to the divorce in May, 1981.

The divorce decree was silent concerning income tax refunds, and the former wife argues that the parties therefore become owners of the property as tenants in common. *See Busby v. Busby*, 457 S.W.2d 551, 554–555 (Tex.1970). The post-divorce losses triggered the refund and the refund check properly was paid by IRS to the trustee. The fact that some or all of the

monies which were paid by IRS to the trustee stemmed from taxes which the debtor and his former wife paid while they were married might, or might not, entitle the wife to a portion of the refund. Arguably, if the former wife had post-divorce losses she also could file application for refund or loss carryback bases. In any event, I conclude that the tax refund is § 541 property of the estate without prejudice to any right which the former wife, Virginia Waynell Evans Wilson, has or might have to establish her right to any portion of the refund by separate proceedings.

It is, therefore, ORDERED by the Court that the trustee, Floyd D. Holder, Jr., acting for the estate of James Gail Wilson, debtor, be, and he is hereby, deemed to be entitled to the income tax refund totalling $17,283.42, free and clear of any demand by Internal Revenue Service, Small Business Administration (except for any proof of claim which it might file seeking parity in payment with other unsecured claimants) and Virginia Waynell Evans Wilson (except for any right in those proceeds which she might establish in separate proceedings).

LET JUDGMENT BE ENTERED ACCORDINGLY.