**In re Michael L. SCHONS and Bonnie Schons, husband and wife, d/b/a Eagle Springs Dairy, Schons Dairy and Schons Farms, Debtors.**

**Bankruptcy No. 83–03316–Y7.**

United States Bankruptcy Court, W.D. Washington, at Seattle.

July 25, 1985.

**666**

Philip H. Brandt, Bellingham, Wash., for Rainier Nat. Bank.

David A. Slacter, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SAMUEL J. STEINER, Bankruptcy Judge.

This motion to determine priorities came on for hearing on March 22, 1985 before the undersigned bankruptcy judge.

The following appeared:

Rainier National Bank, the moving party, by Philip H. Brandt; and Internal Revenue Service by David A. Slacter.

The Court, having reviewed the evidence, heard counsel, considered the memoranda of the parties, and being fully advised, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. This is a Chapter 7 instituted by debtors, Michael L. and Bonnie Schons, who formerly did business as a dairy. Discharge was granted on February 17, 1984.

2. On or about November 3, 1981 debtors granted a security interest in all of their equipment and cattle to Rainier National Bank.

3. The Internal Revenue Service filed tax liens against debtors on June 21, 1983 in the amount of $13,543.31 and October 18, 1984 in the amount of $28,474.86. These liens were filed in the Skagit County auditor's office, the county wherein the debtors resided and did business.

4. The United States Department of Agriculture through its Agriculture Stabilization and Conservation Service funded a Milk Diversion Program through which dairy farmers received compensation by withdrawing all or a portion of their herd from production.

5. Under the Milk Diversion Program, producers were paid $10 for each one hundred pounds of milk by which production is reduced. The payments were intended to compensate producers for diminution in production and to discourage the overproduction of milk.

6. The Milk Diversion Program began on January 1, 1984 and continued through March 31, 1985. Payments were made quarterly as soon as the producer, at the end of a quarter, verified his production and compliance with the program.

7. Debtors' cattle have been sold and slaughtered with the proceeds remitted to Rainier National Bank pursuant to its security interest. Because the herd is out of production, debtor was eligible to participate in the Milk Diversion Program.

8. By letter dated January 11, 1985, the Internal Revenue Service wrote the ASCS requesting that any funds due to debtors under the Milk Support Program be offset against debtors' outstanding tax liability.

9. Rainier National Bank then instituted this proceeding by filing its motion to determine priorities.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction to resolve priorities in assets belonging to the debtors. Bankruptcy Code, Section 105.

2. The general rule is that pre-petition debts cannot be offset against post-petition liabilities where mutuality is lacking. 15 Colliers on Bankruptcy, Section 533.10; *In re Braniff Airways, Inc.*, 42 B.R. 443, 449 (Bkr.Ct.N.D.Tex.1984).

3. Mutuality is present only if the claims and debts are mutual; they must subsist or be owing between the same parties, in the same right or capacity, and must be of the same kind or quality. *In re Braniff Airways, supra* at 449; *In re Whitman*, 38 B.R. 395, 397 (Bkr.Ct.N.D. 1984)

4. Mutuality is lacking where a post-petition liability is owed to a debtor-in-possession or a trustee because these entities differ from the pre-petition debtor. *In re Braniff Airways, supra* at 449, 450.

5. This is not the case here, however, because debtors' petition was filed under Chapter 7. Upon the filing of a Chapter 7 petition, an estate comes into existence which contains all of the debtor's property and rights to property. Section 541 of the Bankruptcy Code. The property is then to be collected, liquidated and distributed to the creditors. Section 704(1) of the Bankruptcy Code.

6. The post-petition liability of the ASCS is to debtors, not to a trustee nor to debtors as debtors-in-possession. Accordingly, because the estate is not involved, mutuality of parties is present; the debtors incurred the pre-petition tax liability to the United States and the United States incurred a post-petition liability to the debtors. Setoff is therefore proper.

7. An independent basis for finding in favor of the United States is found in 26 U.S.C., Section 6323(c)(2)(B), (Internal Revenue Code). This section provides that a pre-existing security interest in property acquired by a debtor after the date such interest arises takes precedence over a subsequently filed federal tax lien only to the extent the property came into existence within 45 days of the date the tax lien was filed.

8. To the extent that the Milk Diversion Program payments came into existence more than 45 days after the tax liens were filed, the Internal Revenue Service's interest is superior to Rainier's interest. *Rice Inv. Co. v. United States*, 625 F.2d 565, 571 (5th Cir.1980); *Donald v. Madison Industries, Inc.*, 483 F.2d 837, 841 (10th Cir.1973).

9. Because the tax liens were filed on June 21, 1983 and October 18, 1984, they enjoy priority ever the bank's security interest as to property acquired after August 5, 1983 (lien 1) and December 12, 1984 (lien 2). The second tax lien has priority only insofar as the support payments became due after December 12, 1984. Since the ASCS makes quarterly payments to farmers at the end of each calendar quarter, the second tax lien would take priority over the bank's security interest in program proceeds relating to the fourth quarter of 1984 and the first quarter of 1985.

10. The parties presented no evidence as to what effect, if any, the above analysis has on recovery by Rainier of a portion of the proceeds. However, given the Court's disposition of the setoff issue, any effect would be irrelevant.

11. The Internal Revenue Code provides that tax liens encumbering real property shall be filed in an office designated by the state in which the property is situated or, if no office is designated, with the clerk of the United States District Court. 26 U.S.C., Section 6323(f).

12. Rainier argues that the tax liens were filed in the wrong place because Washington has failed to designate an office for filing tax liens encumbering personal property. The Court does not accept this argument.

13. In 1925, the Washington Legislature designated the place for filing tax liens in RCW Chapter 60.68. RCW 60.68.-010 provides that tax liens shall be filed in the county within which the property is located.

14. Chapter 60.68 was passed for the purpose of authorizing liens in accordance with Section 3186 of the Revised Statutes of the United States, as amended on March 14, 1913. RCW 60.68.050. The Act of March 14, 1913 provided that a tax lien attaches to "all property and rights to property" belonging to a taxpayer. In 1928, the tax lien statute was amended in

several respects and, among other changes, now provided that a tax lien attaches to "all property or rights to property, whether real or personal, belonging to" a taxpayer. From this background, Rainier argues that the federal tax liens in this case were filed in the wrong place because the 1913 Act, referred to by the Washington Legislature, did not refer to personal property.

15. If Rainier's argument is correct, both the 1913 Act and the Washington State law are meaningless because the 1913 Act refers to neither real nor personal property. Instead the Act refers to "property." As recognized by the Courts at the time, "property" meant both realty and personalty. *United States v. Western Union Telegraph Co.*, 50 F.2d 102, 103 (2d Cir.1931).

16. This interpretation was accepted by Congress as well. Neither the House nor Senate Reports relating to the 1928 amendments to Section 3186 refer to the addition of the phrase "whether real or personal." Although both reports discuss other changes in the tax lien statute, neither comments on the modification of the term "property." That neither report makes any mention of the phrase indicates that this additional language effected no substantive change in law. See H.Rep. No. 2, 70th Cong., 1st Sess. (1928) at 35; S.Rep. No. 960, 70th Cong., 1st Sess. (1928) at 43.

17. For at least 30 years both state and federal courts have interpreted RCW 60.-68.010 as requiring that federal tax liens in Washington be filed in the county recorder's office for both real and personal property. *United States v. Winterburn*, 749 F.2d 1283, 1286 (9th Cir.1984); *Hoare v. United States*, 294 F.2d 823, 825 (9th Cir. 1961); *West Coast Credit Co. v. Renfro*, 167 F.Supp. 480, 481 (W.D.Wash.1958); *Weir v. Corbett*, 158 F.Supp. 198, 200 (W.D.Wash.1957); *Johnson Service Co. v. Roush*, 57 Wash.2d 80, 355 P.2d 815 (1960). See also Comment, Federal Tax Liens, 32 Wash.L.Rev. 226 (1957).

18. The Internal Revenue Service filed its tax liens in the county within which debtors' property was located. This is precisely what Washington and federal law provide.

19. Both the lien and offset claims of the Internal Revenue Service have priority over Rainier's security interest.

20. The ASCS may pay whatever funds it holds for the benefit of debtors directly to the Internal Revenue Service. Rainier's request for any other or contrary relief is denied.

## ORDER

Based on the files and records herein, a review of the evidence, the memoranda and arguments of counsel and being fully advised, the Court orders and adjudges as follows:

1. Rainier National Bank's motion for an order granting it first priority in Milk Diversion Program proceeds is denied;

2. The tax liens of the Internal Revenue Service are entitled to priority over Rainier National Bank's security interest;

3. The offset claim of the Internal Revenue Service has priority over Rainier National Bank's security interest;

4. The Agricultural Stabilization and Conservation Service may pay the Internal Revenue Service any funds due to debtors;

5. The Internal Revenue Service tax liens were properly filed in accordance with law; and

6. Each side is to bear its own costs, fees and attorney's fees.