**In re Merlyn Duane RENNICH and Marlys Annetta Rennich, d/b/a Farmers, Debtors.**

**Bankruptcy No. 486–00741.**

United States Bankruptcy Court, D. South Dakota.

Feb. 10, 1987.

James M. Wiederrich, Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, S.D., for Secured Creditor Federal Deposit Ins. Corp.

J. Bruce Blake, Sioux Falls, S.D., for debtors Merlyn Duane Rennich and Marlys Annetta Rennich, d/b/a Farmers.

MEMORANDUM DECISION
AND ORDER

PEDER K. ECKER, Bankruptcy Judge.

On December 16, 1986, Merlyn and Marlys Rennich (debtors) filed for relief under

Chapter 12 of the Bankruptcy Code. According to their schedules, they operate a dairy and farming business in Harrisburg, South Dakota. Also on that date, they filed a motion for use of cash collateral.

On January 16, 1987, Federal Deposit Insurance Corporation (FDIC) filed a motion for relief from the automatic stay and determination of secured status. FDIC holds a secured interest in, among other things, certain equipment of the debtors by way of an assignment.[1] After negotiations, the FDIC and debtors entered into a cash collateral agreement which was approved by the Court at a hearing on February 6, 1987. As part of the stipulation, the debtors agreed to pay the FDIC $542 monthly to compensate for "depreciation" of its interest.

The parties also agreed to disagree and submit to the Court the issue of requiring, as part of adequate protection, interest payments for what is commonly known as lost opportunity costs. Within the context of the Eighth Circuit's holding in *In re Ahlers*, 794 F.2d 388 (8th Cir.1986), both counsel offered elaborate arguments for their positions. *See also In re Briggs Transportation Co.*, 780 F.2d 1339 (8th Cir.1985). (Bankruptcy Courts may allow lost opportunity costs in Chapter 11's.) Essentially, the debtors contend that the FDIC, as an assignee, is not entitled to lost opportunity costs as part of the "benefit of its bargain" as otherwise may be allowed under Bankruptcy Code Section 361, because, as an assignee, it never bargained with the debtors, but only the assignor. FDIC, however, insists that, as a secured creditor, through assignment or otherwise, it is entitled to lost opportunity costs.

■ While the Court finds both counsel's arguments interesting, it believes that the question raised is simply whether lost opportunity costs in the form of interest payments are required for retention of secured equipment as part of the concept of what is adequate protection in a case filed under Chapter 12 of the Bankruptcy Code. At the outset, the Court notes that section 1205, and not section 361, is determinative of adequate protection in a case filed under Chapter 12. 11 U.S.C. § 1205(a).[2]

■ The underlying basis for requiring interest payments for lost opportunity costs as part of adequate protection is the secured creditor's inability to foreclose on its interest and reinvest the proceeds because of the automatic stay provisions of the Bankruptcy Code (11 U.S.C. § 362(a)). *See id.* at 1343–51. Lost opportunity costs recovery is premised on the "indubitable equivalent" language of Bankruptcy Code Section 361(3). *See id. See also In re American Mariner Industries, Inc.*, 734 F.2d 426 (9th Cir.1984); *Grundy National Bank v. Tandem Mining Corp.*, 754 F.2d 1436 (4th Cir.1985). Unlike subsection 361(3), section 1205 does not require payment of the "indubitable equivalent" as part of adequate protection. 11 U.S.C. § 1205. Section 1205 only provides the following alternatives:

1. A creditor may receive cash payments (may be periodic) for decrease in value of secured property resulting from automatic stay (§ 362), or use, sale, or lease of the property (§ 363), or the granting of a superior lien (§ 364).

2. A creditor may receive an additional or replacement lien for a decrease in value of secured property resulting from automatic stay (§ 362), or use, sale, or lease of the property (§ 363), or the granting of a superior lien (§ 364).

3. A creditor may receive cash payments for use of secured farmland property based upon the property's rental value, net income production, and earning capacity of the property.

4. A creditor may receive other relief, other than entitlement to compensa-

---

1. FDIC became the assignee to the creditor bank's interest when it closed the bank and administered its assets.

2. Section 1205(a) reads as follows:
   "Section 361 does not apply in a case under this chapter."

· tion allowable under § 503(b)(1) [actual and necessary administrative expenses of preserving the estate], as will adequately protect the value of the secured property.

11 U.S.C. § 1205(b).[3]

█ From this, it necessarily follows that a debtor in a case filed under Chapter 12 of the Bankruptcy Code is not required to pay lost opportunity costs in the form of interest payments or otherwise for the retention of secured equipment to "adequately protect" the affected creditor. Under section 1205, it is enough that these debtors make the agreed periodic $542 cash payment to FDIC, thereby protecting against any decrease in value of the equipment. *See* 11 U.S.C. § 1205(b)(1).

Chapter 12's legislative history unequivocally supports this conclusion.[4] It reads as follows:

Under current law, the filing of a bankruptcy petition operates as an automatic stay against any act to create, perfect, or enforce a lien against property of the estate. The secured creditor must file a motion to have the stay lifted in order to proceed with foreclosure. The primary basis for lifting the stay is a lack of adequate protection. This term is not defined in the Bankruptcy Code, but examples of adequate protection are set out in 11 U.S.C. 361.

The Fourth and Ninth Circuits have held that adequate protection requires the debtor to compensate the secured creditor for so-called "lost opportunity costs" in those cases where the value of the collateral is less than the amount of debt secured by the collateral. (citations omitted) The payment of lost opportunity costs requires the periodic payment of a sum of cash equal to the interest that the undercollateralized secured creditor might earn on an amount of money equal to the value of the collateral securing the debt.

Lost opportunity costs payments present serious barriers to farm reorganizations, because farmland values have dropped so dramatically in many sections of the country—making for many undercollateralized secured lenders. Family farmers are usually unable to pay lost opportunity costs. Thus, family farm reorganizations are often throttled in their infancy upon motion to lift the automatic stay.

Accordingly, section 1205 of the conference report provides a separate test for adequate protection in Chapter 12 cases. It eliminates the need of the family farmer to pay lost opportunity costs, and adds another means for providing adequate protection for farmland—pay-

---

**3.** Section 1205(b) reads as follows:

(b) In a case under this chapter, when adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of property securing a claim or of an entity's ownership interest in property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of property securing a claim or of an entity's ownership interest in property;

(3) paying to such entity for the use of farmland the reasonable rent customary in the community where the property is located, based upon the rental value, net income, and earning capacity of the property; or

(4) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will adequately protect the value of property securing a claim or of such entity's ownership interest in property.

**4.** Any argument insisting that Congress only intended to preclude recovery of lost opportunity costs with respect to farmland and not equipment is without merit. The legislative history clearly reflects an intent to completely eliminate lost opportunity costs recovery. It only discusses payment of "reasonable market rent" for farmland as a plausible adequate protection alternative to that of a payment for decrease in value of that property.

ing reasonable market rent. Section 1205 eliminates the "indubitable equivalent" language of 11 U.S.C. 361(3) and makes it clear that what needs to be protected is the value of property, not the value of the creditor's "interest" in property.

It is expected that this provision will reduce unnecessary litigation during the term of the automatic stay, and will allow the family farmer to devote proper attention to plan preparation.

Joint Explanatory Statement of the Committee of Conference, *reprinted in* 134 Cong.Rec. H8999 (daily ed. Oct. 2, 1986).

Based on this, the Court holds that a debtor in a case filed under Chapter 12 of the Bankruptcy Code is not required to pay lost opportunity costs in the form of interest payments or otherwise for the retention of secured equipment to adequately protect the affected creditor.

IT IS, THEREFORE, ORDERED that FDIC's request for lost opportunity costs in the form of interest payments is denied.