**In re Harold RINEHART and Marilyn Rinehart, d/b/a Farmers, Debtors.**

**Bankruptcy No. 87–30042.**

United States Bankruptcy Court,
D. South Dakota.

July 24, 1987.

James P. Hurley, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, S.D., Jonathan K. Van Patten, Vermillion, S.D., for debtors.

Jon Haverly, acting through Small Business Admin., Sioux Falls, S.D., for U.S.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

### INTRODUCTION

This is before the Court on an amended motion for order to show cause filed on behalf of Harold and Marilyn Rinehart ("debtors") by Attorney James P. Hurley on May 18, 1987.[1] Debtors substantively allege: 1) the Small Business Administration ("SBA") does not have a right to offset its prefiling claims against Agricultural Stabilization and Conservation Service-Commodity Credit Corporation ("ASCS–CCC") farm program payments owed by the ASCS–CCC to the debtors to satisfy

prefiling claims of the SBA because this is not a "mutual debt" as required under Bankruptcy Code Section 553(a); 2) the SBA's offset violated the automatic stay provisions of Bankruptcy Code Section 362(a); and 3) because the SBA's offset was "willful," debtors are entitled to damages under Bankruptcy Code Section 362(h). SBA conversely contends: 1) pursuant to the Debt Collection Act, 31 U.S.C. § 3701, *et seq.*, and C.F.R. § 140.5, which give rise to an "administrative offset," it has a right to offset postfiling ASCS–CCC payments under Section 553(a); 2) that it did not violate the automatic stay provisions of Bankruptcy Code Section 362(a) because, postfiling, it only preserved the "status quo," which is comparable to an "administrative freeze" on a bank account, and no Section 542 turnover action was otherwise commenced. Attorney Jon Haverly represented the SBA, and a hearing was held in Pierre, South Dakota, on June 1, 1987. The material facts are these.

### BACKGROUND

Debtors, who are husband and wife, filed for relief under Chapter 11 of the Bankruptcy Code on February 27, 1987. They operate a farming and ranching business near Highmore, South Dakota. Over the years, debtors have expanded their operation to 8,561 acres owned, plus additional leased acreage. They also participate in the Agricultural Stabilization and Conservation Service and Commodity Credit Corporation ("ASCS–CCC") farm programs.

During April, 1981, in exchange for a second mortgage on certain property and an executed promissory note, SBA lent the debtors $103,000. In January, 1982, the principal was increased to $171,600 in exchange for a third mortgage on certain other property and an executed "modifica-

---

1. Debtors initially filed a motion for order to show cause against the Farmers Home Administration ("FmHA") on May 8, 1987, when payments due the debtors were not received. When they were informed that the SBA, and not the FmHA, was involved, they filed an amended motion. SBA has filed several related motions. They include: a resistance to motion for order to show cause filed on May 15, 1987; a motion

for relief from the automatic stay filed on May 15, 1987; and a motion to strike pleading filed on June 1, 1987. Parties agreed that because all of the pleadings concern the principal question of whether the SBA may offset ASCS–CCC farm program payments owed by ASCS–CCC to the debtors to satisfy a prefiling claim of SBA, they may be consolidated into one action.

tion" of the promissory note. Under the latter note, debtors were to make twenty-four annual payments of $12,177.00 on January 1 of each year, beginning with January 1, 1983 (SBA ex. 1). When debtors failed to make the 1986 payment, SBA declared a default and accelerated the debt (SBA ex. 3).

Beginning in January, 1987, SBA commenced an action for administrative offset pursuant to certain federal regulations. In a letter dated January 2, 1987, SBA informed the debtors that this constituted thirty days' "written notification" of intended offset unless the parties have otherwise entered into a repayment agreement or the debtors timely petitioned for review to the SBA's Hearings and Appeals Office (SBA ex. 4). No repayment agreement was reached or appeal taken (SBA ex. 6).

On February 16, 1987, SBA received a letter dated February 13, 1987, from the Department of Agriculture, approving the SBA's request for offset of ASCS–CCC farm program payments in the amount of $161,563.06. In that letter, the Department noted that the interest on that amount was accruing at a daily rate of $20.33 after December 4, 1986 (SBA ex. 7). SBA filed a proof of claim in the amount of $163,250.24 on March 19, 1987.

As stated, debtors filed their Chapter 11 petition on February 27, 1987.

On March 9, 1987, SBA received a letter dated March 5, 1987, from the Department of Agriculture, which reads, in part (SBA ex. 8):

"Dear [SBA Director]:

This acknowledges a request by [one of your employees] to refrain from setoff action with respect to [debtors] until further notification from the Small Business Administration." [2]

On March 10, 1987, debtors' attorney, James P. Hurley, sent SBA's attorney, Jon Haverly, a letter which reads, in part (debtors' ex. A):

Dear [Attorney]:

Our firm represents [the debtors]. [They] filed a Voluntary Petition under Title Eleven, United States Code on February 26, 1987 ... the automatic stay provisions of the Code prevent any further attempts including telephone calls, letters, collection suits or otherwise, without prior Court approval to collect the amounts claimed.

On April 1, 1987, the United States Department of Agriculture (CCC) issued a check, No. 89038720, in the amount of $1,388.47 payable to the order of the SBA. This was the first ASCS–CCC installment payment.

Debtors were unaware that the SBA had been allowed an ASCS offset. When the debtors did not timely receive payment as expected, after preliminary investigation, they filed a motion for order to show cause on Farmers Home Administration ("FmHA") for turnover of that payment on May 8, 1987. FmHA replied that it had not requested the offset, but suggested the SBA had done so.

On May 11, 1987, SBA's attorney wrote a memo to SBA's "collateral cashier," which reads, in part (SBA ex. 9):

This memorandum is to advise you that Check No. 89038720 payable to SBA relating to [debtors] is the subject of litigation in U.S. Bankruptcy Court.

As a result of this litigation and the stay imposed by 11 U.S.C. § 362 the check must not be processed or applied to the account. The check must be held pending resolution of the litigation and advice of counsel.

On May 15, 1987, the SBA filed a motion for relief from stay to offset the ASCS–CCC payment. On May 18, 1987, debtors amended their motion to show cause directed to the SBA. SBA continued to have possession of the check up and until the June 1, 1987, hearing.

According to the debtors' schedules and disclosure statement, SBA, in its respective second and third mortgage positions on the debtors' real property, is totally undersecured based on the debtors' valuation estimates. See 11 U.S.C. § 506(a).

**2.** No evidence was offered as to when, why, or how the request by the SBA was made.

ISSUES

The principal issues raised are:

1) Whether the Small Business Administration ("SBA") has a right to offset its prefiling claims against ASCS–CCC farm payments under Bankruptcy Code Section 553(a);

2) Whether the Small Business Administration's ("SBA's") postfiling continuation of the offset process, including holding of the Department of Agriculture's check payable to SBA, violates the automatic stay provisions of Bankruptcy Code Section 362(a); and

3) If so, whether the Small Business Administration ("SBA") "willfully" violated the automatic stay under Bankruptcy Code Section 362(h).

## LAW

### First Issue

As to the first issue, the Court holds that the SBA does not have a right to offset its prefiling claims against ASCS–CCC farm payments because the ASCS–CCC, and not the SBA, owes payments to the debtors and, therefore, this is not a "mutual debt owing by such creditor" under Bankruptcy Code Section 553(a). This is based on the following discussion.

 An understanding of Section 553 [3] is fundamental in analyzing this issue. A

---

**3.** Bankruptcy Code Section 553(a) reads as follows:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;

(2) such claim was transferred, by an entity other than the debtor, to such creditor—

(A) after the commencement of the case; or

(B)(i) after 90 days before the date of filing of the petition; and

(ii) while the debtor was insolvent; or

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

---

creditor establishes a right of setoff under this section when the following three-part test is met:

1. A debt owed by the creditor to the debtor arose prior to the commencement of the bankruptcy case;

2. A claim of the creditor against the debtor arose prior to the commencement of the bankruptcy case; and

3. The debt and claim are mutual obligations.

*In re Brooks Farms,* 70 B.R. 368, 371 (Bankr.E.D.Wis.1987). The Code recognizes setoff rights which are created under either federal or state law. *See, e.g., In re Sarkis,* 17 B.R. 174 (Bankr.D.S.D.1982); *In re Brooks Farms,* 70 B.R. at 368. Once established under Section 553, the right to setoff is treated as an allowed secured claim under Bankruptcy Code Section 506(a).[4] What this would mean in the instant case is that the SBA, who, for purposes of this matter, is totally undersecured in terms of its collateral, will otherwise be treated as a secured creditor up to the amount of its debt, right of setoff, and any ASCS–CCC payments owing to the reorganizing farmer debtors.

SBA claims its right to offset postfiling ASCS–CCC farm program payments under the Debt Collection Act, 31 U.S.C. § 3701, *et seq.,*[5] and C.F.R. § 140.5.[6] Debtors in-

---

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor.

**4.** Bankruptcy Code Section 506(a), in pertinent part, reads:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, *or that is subject to setoff under section 553 of this title,* is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or *to the extent of the amount subject to setoff,* as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the *amount so subject to setoff is less than the amount of such allowed claim.* (emphasis added)

**5.** 31 U.S.C. § 3716 provides, in pertinent part:

(a) After trying to collect a claim from a person under section 3711(a) of this title, the

sist that the SBA does not have a right to offset the ASCS–CCC payments because either the payments are owed to them by the ASCS–CCC, and not the SBA, and, therefore, no "mutual debt [is] owing by such creditor," as required under Section 553(a), or an attempted offset against a Chapter 11 debtor-in-possession lacks mutuality as required under that section. Conversely, SBA contends that because it is part of the government and the government, through its ASCS program, owes the debtors, there is a "mutual debt" owing.

The third part of the Section 553 test requires that the right to an offset must be on account of a "mutual debt." The term, "mutual debt," is not defined in the Bankruptcy Code and, thus, applicable case law must be reviewed to understand the meaning of the term. "To be mutual, the debts must be in the same right and between the same parties standing in the same capacity." 4 *Collier on Bankruptcy* ¶ 553.04[2], at 553–18 (15th ed. 1987); *see also In re Visiting Home Services, Inc.,* 643 F.2d 1356, 1360 (9th Cir.1981); *In re Brooks Farms,* 70 B.R. 368, 371 (Bankr.E.D.Wis. 1987); *In re Braniff Airways,* 42 B.R. 443, 449 (Bankr.N.D.Tex.1984); *In re Brendern Enterprises, Inc.,* 12 B.R. 458, 459 (Bankr. E.D.Pa.1981). The mutuality requirement is strictly construed. *See 4 Collier on Bankruptcy* ¶ 553.04, at 553–16 (15th ed. 1987).

The question then presented is whether the debts are "between the same parties, standing in the same capacity." The concept of setoff is based on the common sense observation that it makes little sense

to require A to pay B when B owes A. *See Studley v. Boylston National Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 57 L.Ed. 1313 (1913). This, of course, would not apply when A owes B and B owes C. The parties must be identical on both sides; otherwise, mutuality is not established. The Court must, therefore, examine the identity of both sides to determine whether the requirement of mutuality has been satisfied.

At the outset, the Court notes, in the reported cases on setoffs, the primary question regarding mutuality has usually focused on the debtors. As stated by the bankruptcy court in *In re Braniff Airways, Inc.,* 42 B.R. 443, 449 (Bankr.N.D. Tex.1984): "Because the debtor and the debtor-in-possession are separate and distinct entities, the courts have concluded that the requisite element of mutuality of parties is lacking whenever a creditor attempts to offset pre-petition debt against a post-petition claim." This distinction is grounded on the language of 11 U.S.C. § 553(a), which requires both the obligation and the claim to arise before the commencement of the case. *See 4 Collier on Bankruptcy* ¶ 553.08[1], at 553–37 (15th ed. 1987). *See also* 11 U.S.C. § 549, which restricts postpetition transfers of property. However, the Court finds the debtor and debtor-in-possession distinction inapplicable to the instant facts because both the ASCS–CCC debt and the SBA claim arose prefiling.

SBA's position is simply that because it is part of the government, it stands "in the same capacity" as the ASCS–CCC for Sec-

head of an executive or legislative agency may collect the claim by administrative offset. The head of the agency may collect by administrative offset only after giving the debtor—
 (1) written notice of the type and amount of the claim, the intention of the head of the agency to collect the claim by administrative offset, and an explanation of the rights of the debtor under this section;
 (2) an opportunity to inspect and copy the records of the agency related to the claim;
 (3) an opportunity for a review within the agency of the decision of the agency related to the claim and
 (4) an opportunity to make a written agreement with the head of the agency to repay the amount of the claim;

 (b) Before collecting a claim by administrative offset under subsection (a) of this section, the head of an executive or legislative agency must prescribe regulations on collecting by administrative offset.

6. 13 C.F.R. § 140.5 provides, in pertinent part:
 "(a) SBA may, after attempting to collect a claim from a person under normal SBA collection procedures, collect the claim by means of administrative offset."
 *See also* 7 C.F.R. § 13.6 (concerning requests by other federal agencies for administrative offsets by ASCS).

tion 553(a) purposes. It cites *Small Business Administration v. McClellan,* 364 U.S. 446, 81 S.Ct. 191, 5 L.Ed.2d 200 (1960); *Luther v. United States,* 225 F.2d 495 (10th Cir.1954), *cert. denied,* 350 U.S. 947, 76 S.Ct. 321, 100 L.Ed. 825 (1956); and *W.T. Jones and Company v. Foodco Realty, Inc.,* 318 F.2d 881 (4th Cir.1963), as support for its position. Its argument essentially is that no matter which governmental agency owes the debt, any other governmental agency is entitled to offset its claim under Bankruptcy Code Section 553.

Its reliance on *McClellan, Luther,* and *Foodco Realty* is misplaced. *McClellan* involved a distribution of assets priority dispute under Section 64(a)(5) of the Bankruptcy Act. The specific issue addressed was whether the SBA was entitled to priority for "debts due to the United States" under Section 64(a)(5) and R.S. § 3466 [31 U.S.C. § 191] when it joined a private bank in making a loan and agreed to share in the money collected. Section 64(a), in pertinent part, read:

> The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be
>
> ....
>
> (5) debts other than for taxes owing to any person, including the United States, who by laws of the United States is entitled to priority....

Under R.S. § 3466, the United States was entitled to priority "[w]henever any person indebted to the United States is insolvent." *McClellan, supra* 364 U.S. at 451, 81 S.Ct. at 195. Recognizing that the purpose of these sections "is simply to protect the interest of the Government in collecting money due it," the Court held that, notwithstanding the SBA's private bank relationship, it is part of the "United States" for Section 64(a) purposes. *Id.* at 451–53, 81 S.Ct. at 195–97. Clearly, this case did not address the question of whether the SBA may stand in the shoes of the ASCS-

CCC for claiming an offset under Section 553(a) (or its ancestor, Section 68 of the Bankruptcy Act), but whether the SBA is part of the United States for Section 64(a) purposes. Section 64(a) is the predecessor of Code Section 507.[7] 3 *Collier on Bankruptcy* ¶ 507.01, at 507–15 (15th ed. 1987). Neither Section 64(a) nor its successor, Section 507, have anything whatsoever to do with determining "mutuality" for offset purposes under Section 553(a), but only address priority for distribution of assets.

*Luther,* like *McClellan,* involved an attempt by the United States to collect a debt as a priority creditor in a liquidation of assets setting under Bankruptcy Act Section 64(a)(5). The case centered on the issue of whether the United States, through a debt owed the Commodity Credit Corporation, may offset against an Internal Revenue Service ("IRS") tax refund for Section 64(a)(5) purposes when no claim for IRS overpayments had been filed by petition date and was not determined owed to the debtor until sometime thereafter. Trustee insisted that the United States was not entitled to the income tax refund on three grounds: 1) Commodity Credit Corporation is a distinct legal entity from the United States and, therefore, the United States is not entitled to offset against the IRS payments; 2) because the tax refund was not due the debtor at the time of filing, there was not a mutual debt and credit; and 3) even if the United States could offset, it was inequitable to not subordinate its debt to other creditors. With little analysis other than relying on the "implicit" holding of *Cherry Cotton Mills v. United States,* 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946), the court held the United States could offset the IRS payment by a debt owed the Commodity Credit Corporation even though no IRS payment was owed on the petition date. 225 F.2d at 498.

*Luther* is inapplicable to the instant case for several reasons, including that it involved a priority dispute under Section 64(a)(5) of the Bankruptcy Act (ancestor of Bankruptcy Code Section 507(a)); it arose

---

**7.** Under Section 507(a)(7), governmental priority claims only include certain types of taxes, including income tax, property tax, employment tax, and excise tax.

in a liquidation of assets, and not reorganization, setting; it only addressed the question of whether the Commodity Credit Corporation is a separate legal entity from the United States and whether the IRS payment was considered owed to the debtor when no payments were due and owing on the filing date; and it relied on *Cherry Cotton Mills*, which did not arise in a bankruptcy setting.[8]

*Foodco Realty* only addressed the issue of "[w]hen the [SBA] has joined a private bank in making a construction loan secured by a recorded deed of trust and the borrower becomes insolvent, is the SBA's interest in the unpaid balance of the loan subordinate to mechanic's liens accorded priority over deeds of trust by state law." 318 F.2d at 882. This case is irrelevant for determining whether there is mutuality for Bankruptcy Code Section 553(a) purposes.

The issue under consideration was raised, but not resolved, by Judge Brister in *In re Wilson*, 49 B.R. 19 (Bankr.N.D. Tex.1985). In *Wilson*, the SBA claimed a right to an administrative offset of the debtor's income tax refund. The court made the following observation:

> [The SBA] contends that Small Business Administration and the Department of the Treasury, Internal Revenue Service, each is an instrumentality and agency of the United States and that Small Business Administration should be permitted to setoff [sic] the IRS refund against its pre-petition debt. *It has supported its claim with no authorities except for its contention that § 553 permits the setoff of mutual debts. I cannot find under the circumstances of this case that a mutual debt in fact exists which can be setoff [sic] by SBA.*

*In re Wilson*, 49 B.R. at 21 (emphasis added).

The court did not rule on the setoff claim because it found that the SBA had waived its rights, if any, by failing to seek the setoff before the IRS had paid the refund to the bankruptcy trustee. Nevertheless, the question raised by Judge Brister as to whether the SBA and the IRS are identical parties for purposes of establishing mutuality is pertinent to this case.

There are a few cases involving an attempted offset of ASCS–CCC farm program payments by another agency of the government. *See In re Schons*, 54 B.R. 665 (Bankr.W.D.Wash.1985); *In re Hill*, 19 B.R. 375 (Bankr.N.D.Tex.1982). In *Hill*, the debtor brought a contempt motion against the FmHA for violation of the automatic stay. The FmHA had attempted to offset ASCS payments against its prepetition claims. The court found the entitlement to ASCS payments arose postfiling. From this, the court reasoned that the debtor and debtor-in-possession are separate and distinct entities and, thus, held mutuality of obligations did not exist. 19 B.R. at 380. It also held the FmHA in violation of the automatic stay for its attempted setoff. *Schons* was a Chapter 7 case, and the issue came before the court on a determination of priorities between two creditors. The IRS sought an offset of payments to the debtor under a milk diversion program (debt found to arise postfiling) against prepetition tax liability. The court allowed the setoff, finding mutuality because there was no debtor-in-possession as in a Chapter 11. 54 B.R. at 665. Neither case directly addressed the issue of whether one agency of the government stands "in the same capacity" as another.

Courts have recognized the right of the ASCS–CCC to offset against its own debt when both the claim and debt arose prefiling.[9] *In re Matthieson*, 63 B.R. 56

---

8. In *Cherry Cotton Mills*, the United States Supreme Court, in a *nonbankruptcy* setting, only held that the Court of Claims had jurisdiction to determine whether the United States, through a debt owed the Reconstruction Finance Corporation, may offset against monies owed under the Agricultural Adjustment Act on the ground that 28 U.S.C. § 250(2) permitted the government to have all matters decided in one suit. It further held that although the Reconstruction Finance

Corporation is called a corporation, it is still part of the government. 327 U.S. at 538–40, 66 S.Ct. at 729–30.

9. Courts are divided on the question of when certain ASCS obligations become effective for Section 553(a) purposes. This often explains the inapposite results, because if the Court finds there is no prefiling obligation, then there is not a "mutual debt owing by such creditor" under

(D.Minn.1986) (ASCS allowed to offset in a Chapter 7 case); *In re Brooks Farms*, 70 B.R. 368 (Bankr.E.D.Wis.1987) (In a Chapter 11, CCC was allowed offset against Corn Deficiency Program payments which are administered by the ASCS.); *In re Newell*, Bky. No. 3–85–455 (Bankr.D.Minn. 1985) (In a Chapter 11, CCC was allowed an ASCS payment offset.); *see also In re Schons*, 54 B.R. 665 (Bankr.W.D.Wash. 1985). In *Brooks Farms*, the CCC and ASCS are recognized as having one identity for "mutuality" purposes because: 1) CCC and ASCS are both part of the Department of Agriculture; and 2) ASCS acts on behalf of CCC and administers all government programs since CCC has no employees.[10] 70 B.R. at 370. *See also Matter of Haffner*, 25 B.R. 882 (Bankr.N.D.Ind.1982)[11] (CCC was denied offset when debtors entered into program postpetition and CCC attempted to offset against amounts owed to CCC from prefiling transactions.); *In re Walat Farms, Inc.*, 69 B.R. 529 (Bankr.E. D.Mich.1987) (CCC was denied offset on ground that the Price Support and Production Adjustment Program contract is an executory contract under 11 U.S.C. § 365 and, if assumed by debtor-in-possession,

---

Section 553(a). This forms part of the basis for courts relying on the debtor and debtor-in-possession theory. *See In re Braniff Airways*, 42 B.R. 443, 449 (Bankr.N.D.Tex.1984), for further explanation. One line of authority, beginning with *In re Hill*, 19 B.R. 375, 380 (Bankr.N.D.Tex. 1982), holds that ASCS is a prefiling obligation only when there has been a final determination of deficiency: "[T]he prerequisites for determination of entitlement to money occurs at or near harvest time. It is only after the market price of the crop is determined that one can conclude that a deficiency between that price and the target price occurs. Also, it is late in the season before a conclusion can be reached as to whether there is a 'disaster' which provides disaster payments by ASCS. Therefore, I conclude that those monies, if any, to be paid by ASCS to, or for the benefit of, Hill are post-petition monies." Another line of authority, beginning with *In re Matthieson*, 63 B.R. 56 (D.Minn. 1986), conversely holds that a final determination is unnecessary: "After review of analogous case law ... the court ... rejects the conclusion in *Hill*. The creditor's right to setoff may be asserted in a bankruptcy case even though at the time the petition is filed [the debt] is absolutely owing but not presently due, or where a definite liability has accrued but is as yet unliquidated. (citations omitted) Where an obligation exists prior to bankruptcy, it is irrelevant that the exact amount of liability will not be determined until after the bankruptcy petition was filed." (citations omitted) *Id.* at 59. *See also* 4 *Collier on Bankruptcy* ¶ 553.10[2].

**10.** In part, the *Brooks* court noted:
Wherever there is reference in this decision to CCC, ASCS or the United States Department of Agriculture, such reference shall be deemed to apply to all of these entities. CCC is a wholly-owned federal corporation within the United States Department of Agriculture. Because CCC has no employees, ASCS, a separate agency established by the Secretary of Agriculture with state and county committee offices, acts on behalf of CCC and administers all of the government programs, including the Corn Deficiency Program involved in this case.
70 B.R. at 370 n. 2.
And, among other things, later found:
"The claim of CCC against the debtor and the debt owed by CCC to the debtor were mutual obligations because they were between the same parties, in the same right and in the same capacity."
*Id.* at 371.

**11.** While the *Haffner* court specifically denied the CCC's attempted setoff on the ground that its postpetition obligation may not be set off against the debtors' prepetition obligation because there is no mutuality under Section 553(a), it further noted:
[I]t appears that the regulations themselves would prohibit CCC from pursuing the setoff in this case. For example, 7 C.F.R. Section 13.5, which is entitled "Conditions under which setoff or withholding shall not be made" states in subpart (c):
Setoff shall not be made:
(c) Where collection of a debt has been barred by a discharge in bankruptcy and the debtor has not expressed a desire to make payment.
Admittedly, the discharge has not been entered in this case yet. However, the proceeding is currently pending, and the debts involved have not been determined to be nondischargeable. Further 7 C.F.R. section 1408.-4(b)(3) regarding setoffs states:
... debts due CCC shall be set off, ..., where the following conditions apply:
(3) There is no legal bar to enforcement of the debt.
Since this Court holds that the automatic stay bars the enforcement of collection efforts in this case, the regulations require CCC to refrain from setoff....
By this decision CCC only loses its leverage to force the collection of a prepetition debt from a person who is proceeding under Title 11.
25 B.R. at 888.

any right to deficiency payment arises post-petition and is owed to debtor-in-possession and, therefore, mutuality for Section 553 purposes does not exist.).

Unlike the ASCS and CCC, which are both within the Department of Agriculture, the SBA is an agency that is directly responsible to the President and independent of all other federal agencies.[12] Moreover, they are in different departments, they are managed and supervised by different secretaries and administrators, their budgets are separate and in no way related to one another (payment to the debtors under the farm program will have no effect on the budget or budgeting of SBA), and, finally, they are agencies which provide completely different services. Although both agencies are admittedly part of the government, the SBA has not established that they are "in the same capacity" for Section 553 purposes, but simply insists they are.

■ Guidance for resolution of this question may be found in the corporations context. A corporate subsidiary may not set off an obligation owing to the debtor against a debt owed by the debtor to another subsidiary of the same corporation. *See, e.g., Depositors Trust Co. v. Frati Enterprises,* 590 F.2d 377, 379 (1st Cir. 1979); *In re Vehm Engineering Corp.,* 521 F.2d 186, 190–91 (9th Cir.1975); *Matter of Fasano/Harriss Pie Co.,* 43 B.R. 864, 870 (Bankr.W.D.Mich.1984). A parent corporation may not set off a debt owed to the debtor against the claim of a subsidiary. *See, e.g., In re Berger Steel Co., Inc.,* 327 F.2d 401, 403–04 (7th Cir.1964); *In re Balducci Oil Co., Inc.,* 33 B.R. 847, 853 (Bankr.D.Colo.1983). *See generally 4 Col-*

*lier on Bankruptcy* ¶ 553.04[2], at 553–19 (15th ed. 1987).

■ This case is unlike those reported cases where the single identity of the government agency was clearly established. *See, e.g., IRS v. Norton,* 717 F.2d 767 (3d Cir.1983) (IRS sought offset against a tax refund); *In re Matthieson,* 63 B.R. 56 (D.Minn.1986) (ASCS sought offset against deficiency payments); *In re Brooks Farms,* 70 B.R. 368 (Bankr.E.D. Wis.1987) (CCC sought offset against deficiency payments); *In re Newell,* Bky. No. 3–85–455 (Bankr.D.Minn.1985). Where the federal agency seeks to offset an obligation to the debtor against its own claim, setoff is proper.

■ Serious bankruptcy reorganization policy concerns are also raised by this issue. To allow a governmental agency like the SBA, FmHA, or the like to piggyback under the guise of "government" and offset ASCS–CCC farm program payments may effectively deny farmers or ranchers a meaningful opportunity attempt to reorganize in a Chapter 11, 12, or 13 setting.[13] As stated, in the instant facts, the SBA is totally undersecured in terms of its collateral and would otherwise be treated as secured up to the amount of setoff and ASCS–CCC payments owing. *See* 11 U.S.C. § 506(a) and n. 4. Although the Court is unsure as to the total ASCS–CCC payments owing to the debtors, the SBA's claim is $163,250.24. Clearly, this impact would be devastating to these farmers and every farmer who, prior to filing, participates in the ASCS–CCC program and owes either the SBA or FmHA at the time of filing. This is contrary to the United States Supreme Court's policy analysis in

---

**12.** *See* 15 U.S.C. § 633(a):
 In order to carry out the policies of this chapter there is created an agency under the name "Small Business Administration" ... which Administration shall be under the general direction and supervision of the President and shall not be affiliated with or be within any other agency or department of the Federal Government.

**13.** According to the United States Department of Agriculture (ASCS) statistics, in fiscal year 1987–88, 41,562 of 52,274 South Dakota farms participated in the various ASCS–CCC farm sub-

sidy programs (approximately 80 percent). The breakdown in terms of acreage is as follows: of 4,820,988 wheat acres, 4,439,046 are enrolled; of 3,869,322 corn acres, 3,495,630 are enrolled; of 546,777 grain sorghum acres, 468,475 are enrolled; of 831,458 barley acres, 657,230 are enrolled; and of 1,970,022 oats acres, 1,223,627 are enrolled. While the percentage breakdown of how many South Dakota debtor-farmers are participating is unknown, the Court has no reason to believe that it would differ from the general farmer population.

*United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Addressing the question of what is property of the estate under 11 U.S.C. § 541(a), Justice Blackmun, writing for the majority, observed in part:

In proceedings under the reorganization provisions of the Bankruptcy Code, a troubled enterprise may be restructured to enable it to operate successfully in the future.... By permitting reorganization, Congress anticipated that the business would continue to provide jobs, to satisfy creditors' claims, and to produce a return for its owners. Congress presumed the assets of the debtor would be more valuable if used in a rehabilitated business than if "sold for scrap."

*United States v. Whiting Pools, Inc., supra,* at 203, 103 S.Ct. at 2312. Congress and the President voiced serious concern for family farmer survival in the October, 1986, passage of Chapter 12 bankruptcy reorganization. *See* Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 which became effective November 26, 1986. *See also In re Erickson Partnership,* 68 B.R. 819 (Bankr. D.S.D.1987), *aff'd,* 74 B.R. 670 (D.S.D. 1987); *In re Rennich,* 70 B.R. 69 (Bankr.D. S.D. 1987).

Based on the foregoing, the Court holds that the SBA does not have a right to offset its prefiling claims against the debtors' postfiling ASCS–CCC farm program payments.

### Second Issue

As to the second issue, the Court holds that the SBA's postfiling continuation of its offset process, including holding of the Department of Agriculture check payable to the SBA, violated the automatic stay provisions of Bankruptcy Code Section 362(a). This is based on the following discussion.

■ Under the Bankruptcy Code, an attempted setoff, without obtaining relief from the automatic stay, constitutes a violation of Bankruptcy Code Section 362(a)(7).[14] *See also* 11 U.S.C. § 362(a)(1)

and (6). *See, e.g., IRS v. Norton,* 717 F.2d 767 (3d Cir.1983) (IRS violated the automatic stay by retaining a portion of the debtor's tax refund to offset a prepetition tax liability); *In re Hill,* 19 B.R. at 379. In pertinent part, Section 362(a)(7) provides:

Except as provided in subsection (b) of this section, a petition filed under section ... 302 ... of this title ... operates as a stay, applicable to all entities, of ... the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor.

11 U.S.C. § 362(a)(7).

What this means is that even if SBA can establish a right to setoff, it may not unilaterally exercise this right without violating the automatic stay provision. The automatic stay is fundamental to the reorganization process and the intended rehabilitation of a debtor in bankruptcy. It is intended to give the debtor a "breathing spell from the collection efforts of creditors, and to protect creditors by insuring that the assets of the estate will not be dissipated in a number of different proceedings." *Johnson v. First Nat. Bank of Montevideo, Minn.,* 719 F.2d 270, 276 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). A creditor may not ignore the stay, but must ask for relief from the stay upon a showing of grounds established by 11 U.S.C. § 362(d).

■ The SBA contends that it did not violate the automatic stay, but merely intended to maintain the status quo:

"The United States of America has done nothing other than maintain the status quo which existed prior to the filing in bankruptcy. A creditor does not violate the automatic stay by maintaining the status quo."

SBA Memorandum, p. 2.

Its position is that this only constituted an "administrative freeze" of funds. This contention, however, is contrary to the SBA's own characterization of its action as an offset (SBA exs. 4, 7), as well as the statute and applicable regulations which

---

**14.** Bankruptcy Code Section 553(a), itself, de- notes Section 362 applicability. *See* n. 3.

authorize an offset, not an "administrative freeze." The Court also disagrees with SBA's insistence that a diversion of the ASCS check, payable to order of the SBA, may properly be characterized as an "administrative freeze" when a true administrative freeze is where a bank places a hold on an account upon learning of a bankruptcy filing. *See In re Hoffman*, 51 B.R. 42 (Bankr.W.D.Ark.1985).

 Moreover, many factors militate a finding that the SBA continued to seek repayment of its claim after petition filing. Although at some point between February 13, 1987, and March 5, 1987, it allegedly requested that the Department of Agriculture refrain from setoff and the Department agreed (SBA ex. 8), SBA received the check made out to it (SBA ex. 10) long after the bankruptcy petition filing, the Department's letter to it, or Attorney Hurley's letter (debtors' ex. A). Clearly, the SBA took additional actions to complete its offset after March 5, 1987 (date of Department of Agriculture letter agreeing to refrain from setoff). Aside from that, it continued in its collection pursuits after Attorney Hurley's letter in that it took possession of the check and never contacted either the debtors or the Court. It obviously became very concerned about its own position when it was informed that the debtors had, on May 8, 1987, filed an order to show cause against the FmHA for return of the check—a "nice" memo, which was dated May 11, 1987, was issued by SBA's attorney to its "collateral cashier" not to process or apply the check to the account (SBA ex. 9). This was 73 days after petition filing, 62 days after Attorney Hurley's letter, and many weeks after the debtors expected this money which they desperately needed to facilitate their reorganization effort.

Based on the foregoing, the Court finds that the SBA's retention of the check, received by it long after the filing of the bankruptcy petition, is in and of itself a violation of the automatic stay. *See, e.g., In re Haffner*, 25 B.R. 882 (Bankr.N.D.Ind. 1982). It further finds that the SBA's assertion that it was only maintaining the status quo after the February 27, 1987, petition filing or March 10, 1987, letter from Attorney Hurley is without merit. Therefore, the Court holds that the SBA's postfiling continuation of its offset process, including holding of the Department of Agriculture check payable to the SBA, violated the automatic stay provisions of Bankruptcy Code Section 362(a).

### Third Issue

As to the third issue, the Court finds that the SBA "willfully" violated the automatic stay under Bankruptcy Code Section 362(h), thereby entitling the debtors to seek damages for injury allowable under that provision. This is based on the following discussion.

 Under the Bankruptcy Code, a debtor may recover actual damages, including costs, attorneys' fees, and punitive damages, for a willful violation of the automatic stay. 11 U.S.C. § 362(h) reads as follows:

> "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

For purposes of Section 362(h), "willful" means "deliberate or intentional." *In re Mewes*, 58 B.R. 124, 128 (Bankr.D.S.D. 1986). Where there is actual notice of the filing, it must be presumed that the offset was deliberate or intentional. *In re Shafer*, 63 B.R. 194, 198 (Bankr.D.Kan.1986); *In re Meinke, Peterson & Damer, P.C.*, 44 B.R. 105, 108 (Bankr.N.D.Tex.1984).

 Based on its previous findings, including that the SBA continued collection efforts of its prepetition claim by administrative offset after it had notice of the petition filing by way of Attorney Hurley's March 10, 1987, letter or otherwise, the Court finds that the SBA "willfully" violated the automatic stay provision under Bankruptcy Code Section 362(h). Mindful of a number of cases which have held that attempted setoff of government payments to the debtor are subject to the automatic

stay provisions, *see, e.g., IRS v. Norton,* 717 F.2d 767 (3d Cir.1983); *In re Carlsen,* 63 B.R. 706 (Bankr.C.D.Cal.1986); *In re Shafer,* 63 B.R. 194 (Bankr.D.Kan.1986); *In re Hill,* 19 B.R. 375 (Bankr.N.D.Tex. 1982), and how carefully courts scrutinize these matters, the SBA was clearly proceeding at its own risk after receipt of debtor attorney Hurley's March 10, 1987, letter, if not before.

Debtors' counsel is directed to schedule a hearing with the Clerk before the Bankruptcy Court on notice to SBA, ASCS–CCC, the Department of Agriculture, and counsel for determination of damages or sanctions against the SBA for the willful violation of the stay provisions of Section 362.

Accordingly, the above and foregoing hereby constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankr.R.P. 7052 and 9014 and Fed.R.Civ.P. 52. Counsel for the debtors is directed to submit an appropriate order in accordance with Bankr.R.P. 9021.