**UNITED STATES of America Acting By and Through the FARMERS HOME ADMINISTRATION, Appellant,**

v.

**Perry Roy KETELSEN and Lola Mae Ketelsen, Appellees.**

**CIV. 87–5126.**

United States District Court, D. South Dakota, W.D.

March 4, 1988.

Robert M. Nash, Wilson, Olson & Nash, P.C., Rapid City, S.D., for Ketelsens.

Dennis C. Whetzal, Rapid City, S.D., Trustee, pro se.

Robert J. Haar, Asst. U.S. Atty., Sioux Falls, S.D., for U.S.

## MEMORANDUM OPINION

BATTEY, District Judge.

### NATURE AND PROCEDURAL HISTORY

The Appellant Farmers Home Administration (FmHA) appeals a judgment of the

bankruptcy court[1] for the Western Division of South Dakota 78 B.R. 573 (1987) which awarded actual damages of $1,100, punitive damages of $13,284.96, and attorney's fees of $3,332.58 against FmHA for violation of the automatic stay provision of 11 U.S.C. § 362(a). This action originated in the bankruptcy court as a "core proceeding" pursuant to 28 U.S.C. § 157(b). This Court entertains jurisdiction pursuant to 28 U.S.C. § 158.

## FACTS

Appellees Perry Roy Ketelsen and Lola Mae Ketelsen, husband and wife, live in Sturgis, South Dakota, and operate a 1,100 acre farm in Meade County, South Dakota. By 1986, the Ketelsens had become indebted to the Appellant FmHA in excess of $240,000.

On December 31, 1986, Ketelsens filed a Chapter 12 petition for bankruptcy. FmHA was listed as a secured creditor on the bankruptcy schedules and received notice of the bankruptcy proceeding.

On February 28, 1987, Ketelsens filed their 1986 income tax return. Ketelsens were informed by the IRS in a notice dated April 6, 1987, that they had overpaid their 1986 tax obligation in the amount of $3,446. FmHA attempted to offset $2,166 of the $3,446 against the FmHA obligation of $240,000. IRS cooperated with FmHA in this offset. After receiving the April 6, 1987, notice, Ketelsens' attorney notified FmHA that the attempted offset was in violation of the automatic stay provision of the Bankruptcy Code (11 U.S.C. § 362(a))[2]. Various communications thereafter ensued between FmHA and the bankrupts' attorney concerning the propriety of the claimed offset.

The position of FmHA was that the offset was authorized by 11 U.S.C. § 553(a).[3]

Ketelsens claimed that their failure to obtain the refund caused them to be in need of funds to prepare for the 1987 crop year, thereby causing the damages sought. They commenced this action on May 26, 1987, seeking a return of the income tax refund, actual and punitive damages, plus attorney's fees and costs. A trial was held on August 24, 1987. The court found that FmHA's actions were willful in violation of the automatic stay provisions of 11 U.S.C. § 362(a). Accordingly, the court ordered FmHA to pay Ketelsens $1,100 in actual damages, $13,284.96 in punitive damages, and $3,332.28 in attorney's fees and costs, for a total judgment of $17,717.24. In addition, the court provided that the offset portion of the tax refund in the amount of $2,166 be refunded to the Ketelsens. The refund check of $2,106 was delivered to the Ketelsens at the conclusion of the hearing.

The bankruptcy court's oral ruling following trial was embodied in the court's findings of fact and conclusions of law which, along with the court's judgment, were entered September 25, 1987. The court's findings numbered 14 to 19 inclusive[4] set forth the court's findings upon

---

1. Honorable Peder K. Ecker, Bankruptcy Judge

2. Section 362 of the Bankruptcy Code provides that a petition in bankruptcy operates as a stay of "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title ... against any claim against the debtor...." 11 U.S.C. § 362(a)(7).

3. Bankruptcy Code § 553(a) provides in part:
    Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect the right of any creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case except....

4. 14. That viewed as a whole, the Defendant, Farmers Home Administration's actions were not only wilful but were also done with notice.

    15. That Farmers Home Administration did not seek relief from the automatic stay before seizing the refund and took no action to correct its violation of the automatic stay even after proper request.

    16. That the Defendant's actions and inactions constitute a direct violation of 11 U.S.C. § 362 and Plaintiffs are accordingly entitled to recover actual and punitive damages, costs and attorney's fees under 11 U.S.C. § 362(h).

    17. That as a result of Defendant, Farmers Home Administration's, violating of the automatic stay, Perry and Lola Ketelsen suffered actual damages in the amount of $1,100.00 which represents the damages incurred from

which the court's legal conclusions as to willfulness were based.

## ISSUES

The following questions are presented for purposes of this appeal:

1. Whether the bankruptcy court erred in the application of 11 U.S.C. § 553.

2. Whether the bankruptcy court erred in failing to apply the provisions of 11 U.S.C. § 505(a)(2)(B).

3. Whether the bankruptcy court erred in proceeding with this case as there had been no exhaustion of administrative remedies.

4. Whether the evidence supported an award of actual damages.

5. Whether an award of punitive damages was proper.

## STANDARD OF REVIEW

11 U.S.C. Rule 8013 provides for the weight accorded a bankruptcy judge's findings of fact, to-wit:

> On appeal, the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

11 U.S.C. Rule 8013. *See also In re Clarkson*, 767 F.2d 417, 419 (8th Cir.1985). "This test obtains as to facts found, but not necessarily as to the legal conclusions to be reached or drawn from the facts so found." *In re Naftalin & Co.*, 333 F.Supp. 136, 140 (D.Minn.1971), *vacated on other grounds* 469 F.2d 1166 (8th Cir.1972). "Where there is no factual dispute, however, but purely a question of law, ... the standard is not so stringent nor so high." *In re Mieux*, 362 F.Supp. 1040, 1042 (D.Minn.1973). Thus it has been held that a bankruptcy court's conclusions of law are freely reviewable on appeal. *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268, 275 (1961).

## ISSUE NO. 1

### WHETHER THE BANKRUPTCY COURT ERRED IN THE APPLICATION OF 11 U.S.C. § 553.

FmHA argues that the bankruptcy court erred in finding that FmHA was in violation of the automatic stay when it applied the offset against Ketelsens' indebtedness. FmHA asserts that because the offset of Ketelsens' income tax refund was commenced pursuant to 26 U.S.C. § 6402(d) by FmHA over 60 days prior to the filing of the Chapter 12 petition, that the provisions of the automatic stay are inapplicable.[5] FmHA argues that such an application would in effect be retroactive and not within the automatic stay provisions of 11 U.S.C. § 362.

Section 553 of the Bankruptcy Code provides in pertinent part:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any

---

being unable to plant and harvest 80 acres of oats located on their home place.

18. That due to the Defendant's wilful conduct in failing to return the improper offset, which was done with notice that such conduct was in violation of the the automatic stay, Plaintiff is entitled to punitive damages in the amount of $13,284.96.

19. That as a result of Defendants wilful conduct and violation of the automatic stay, Plaintiff is also entitled to reasonable attorney's fees and costs, as set out in the Affidavit by Robert M. Nash and Frances R. Burnett, which are in the total amount of $3,332.28.

**5.** 26 U.S.C. § 6402(d) provides:

(1) In general.—Upon receiving notice from any Federal agency that a named person owes a past-due legally enforceable debt (other than any OASDI overpayment and past-due support subject to the provisions of subsection (c)) to such agency, the Secretary shall—

(A) reduce the amount of any overpayment payable to such person by the amount of such debt;

(B) pay the amount by which such overpayment is reduced under subparagraph (A) to such agency; and

(C) notify the person making such overpayment that such overpayment has been reduced by an amount necessary to satisfy such debt.

right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C. § 553. Section 553 allows the set off of a mutual debt; however, such action is expressly subject to the automatic stay provisions of 11 U.S.C. § 362. Section 362 of the Bankruptcy Code provides in pertinent part:

(a) Except as provided in subsection (b) of this section, the petition filed under section 301, 302, or 303 of this title ... operates as a stay applicable to all entities, of

.    .    .    .    .

(7) the setoff of any debt owed to the debtor that arose before the commencement of the case under this title against any claim against the debtor.

11 U.S.C. § 362(a).

■ The effect of section 362(a)(7) is to stay the exercise of any pre-petition setoff. *In re Mealey*, 16 B.R. 800 (Bankr.E.D.Pa. 1982). Relief from the automatic stay is obtained pursuant to 11 U.S.C. § 362(d) after proper request by a party in interest and after notice in hearing. 11 U.S.C. § 362(d). Thus, both sections 553 and 362 preserve a creditor's right to any setoff he possesses, but automatically stays the exercise of that right unless the creditor obtains from the bankruptcy court relief from the automatic stay. *United States v. Reynolds*, 764 F.2d 1004, 1006 (4th Cir. 1985). The purpose of the automatic stay provisions of section 362 is two-fold: first, to give the debtor a "breathing spell" from

his creditors [6]; and second, to prevent one creditor from rushing to enforce its lien to the detriment of the other creditors. *See In re Ahlers*, 794 F.2d 388, 393–94 (8th Cir.1986).[7]

FmHA's position is that this matter involved a prepetition obligation owed to the government and a pre-petition tax refund claim on the debtors' 1986 earnings. FmHA first argues that a pre-petition debt owed the government can be set off by a pre-petition tax refund, even though the refund is processed after the filing of a petition in bankruptcy. Second, FmHA asserts that because the offset of the Ketelsens' refund was commenced prior to the commencement of the stay pursuant to 26 U.S.C. § 6402(d), such actions were outside the scope of the automatic stay provisions of section 362.

■ FmHA relies on the case of *Segal v. Rochelle*, 362 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) for its proposition that such a setoff is proper even though the tax refund is processed after the petition in bankruptcy is filed. *Segal* involved an application by the debtors to obtain loss-carryback refunds for losses suffered by the debtors' partnership prior to the filing of their bankruptcy petitions. The question presented in *Segal* was whether the loss-carryback refunds had passed as "property ... which prior to the filing of the petition the [bankrupt] could by any means have transferred." 362 U.S. at 377, 86 S.Ct. at 513–14, *quoting* section 70(a)(5) of the Bankruptcy Act of 1898. If the funds were found to be "property" and able to have been "transferred" prior to the filing of the bankruptcy, title to the refund would vest by operation of law with the trustee. The court held in *Segal* that

6. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 340, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 5963, 6296–97. The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him to bankruptcy. *Id.*

7. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 340, 1978 U.S.Code Cong. & Admin.News at 6297. The automatic stay also provides creditor protection. Without it, creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that. *Id.*

the funds did constitute property as that term was defined under the Bankruptcy Act of 1898 and that a transfer could have been made prior to the bankruptcy. Therefore, even though the refund claim was filed post-petition, the tax refund was nevertheless a pre-petition debt of the IRS to the taxpayer, the title to which was vested with the trustee. *Id.*

*Segal* stands for the proposition that even though a claim for a loss-carryback tax refund is made after the filing for bankruptcy, that refund is not a post-petition debt of the IRS, but is instead a pre-petition debt of the IRS. This distinction becomes important with respect to setoffs. The law is clear that with respect to mutual pre-petition debts between a debtor in bankruptcy and a creditor that setoff is allowed by Bankruptcy Code § 553. *See* 11 U.S.C. § 553. However, "the rule is well-settled that a creditor, the IRS, cannot set off a pre-petition claim against a post-petition debt to the debtor or the bankruptcy is stayed." *In re Jackson Mfg. Co.*, 50 B.R. 506–07 (Bankr.E.D.Tenn.1985), citing *Cooper–Jarrett, Inc. v. Central Transport, Inc.*, 726 F.2d 93 (3d Cir.1984); *Prudential Ins. Co. v. Nelson*, 101 F.2d 441 (6th Cir. 1939) *cert. denied* 308 U.S. 583, 60 S.Ct. 106, 84 L.Ed. 489 (1939).

Given the above framework, the Ketelsens' tax refund, even though determined and claimed post-petition, should be characterized as a pre-petition debt owed by the IRS to the debtor. There is no argument on this point. However, to say that the debt can be applied against the debtor's obligation to FmHA even after a petition in bankruptcy has been filed avoids one important exception to the rule of setoff embodied in section 553. By its very terms, section 553 is limited by the automatic stay provisions of section 362.

A factual basis similar to that presented in this case was addressed in *United States v. Norton*, 717 F.2d 767 (3d Cir.1983). Subsequent to the filing of their Chapter 13 petition but prior to the confirmation of their plan of reorganization, the debtors filed an income tax return which showed that they were entitled to a tax refund. *Id.* at 769. Without first obtaining relief from the automatic stay, the IRS proceeded to obtain a portion of the refund on account of a tax liability incurred by the debtors two years previous to the bankruptcy. *Id.* The bankruptcy court found that the IRS was not entitled to retain the refund. *Id.* The court also found that the IRS had violated the automatic stay provisions of section 362 in retaining the debtors' tax refund. Because the IRS had instituted a policy of retaining the refunds of all taxpayers who had filed their bankruptcy petition, the bankruptcy court held the IRS in contempt and imposed a fine of $150. *Id.*

In a question of first impression before any court of appeals[8], the Third Circuit held that the IRS had violated the automatic stay provisions of the Bankruptcy Code. *Id.* at 769. At the outset of its opinion, the court in *Norton* noted that the Bankruptcy Code had provided for the collection of taxes and had attempted to reconcile three sets of interest: "the interests of general creditors who do not want a debtor's funds to be exhausted by accumulated back taxes; the interests of the debtors whose fresh start should not be burdened by accumulated taxes, and the interests of the public in not losing taxes whose collection the law has restrained." *Id.* at 770. The court then went on to find that Congress had given a priority claim on the assets of a debtor's estate for tax liabilities. *Id.*

Under the facts of *Norton*, the IRS held a secured claim with priority which, according to the provisions of the Chapter 13 plan, were to be paid in full. *Id.* However, instead of waiting for scheduled payments from the debtors in accordance with

---

**8.** The court in *Norton* did note that the issue had been addressed by bankruptcy courts in the following cases: *In re Internal Revenue Service Liabilities and Refunds in Chapter 13 Proceedings*, 30 B.R. 811 (Bankr.D.Tenn.1983); *In re Powers*, 28 B.R. 86 (Bankr.E.D.Pa.1983); *In re Perry*, 26 B.R. 599 (Bankr.E.D.Pa.1983); *In re Harris*, 19 B.R. 624 (Bankr.E.D.Pa.1982); *Mealey v. Dept. of Treasury*, 16 B.R. 800 (Bankr.E.D.Pa. 1982); *Wilson v. IRS*, 29 B.R. 54 (Bankr.W.D. Ark.1982).

the confirmed plan, the IRS adopted a policy by which it "froze" the debtor's account so as to preserve its setoff rights. The IRS argued that it was not exercising any setoff but instead was merely retaining the funds. The IRS urged that since it did not actually credit the debtor's account, the retention of the overpayment was not a setoff.

The bankruptcy court declined to adopt the argument of the IRS and ruled that the broad scope of the automatic stay had been violated. The court of appeals agreed and reasoned that:

> The automatic stay protects debtors from their creditors and creditors from themselves while a repayment plan is developed. If a creditor could circumvent the automatic stay simply by delaying the entry of a setoff or credit in its books, it could hold the funds until the case was closed and then deposit them into its own bank account. By the unilateral action of one creditor, these funds would become available for distribution to other creditors or for use by the debtor in a Chapter 13 plan, thus making it that much less likely that the debtor could be rehabilitated.

*Id.* at 773. *See also United States v. Reynolds*, 764 F.2d 1004 (4th Cir.1985) (4th Circuit adopted the rule in *Norton* and rejected the IRS's argument that its "freeze" of tax refunds merely preserved the status quo).

In this case, FmHA was listed as a secured creditor on the bankruptcy schedules and received notice of the bankruptcy proceedings. FmHA participated in the confirmation of debtors' Chapter 12 reorganization plan. Instead of moving the bankruptcy court for relief from the provisions of the automatic stay,[9] the FmHA proceeded with the offset.

This Court recognizes that section 6402 of the Internal Revenue Code vests the IRS with the authority to make an offset. However, such actions must be stayed to preserve the interests of the debtor and other creditors. The bankruptcy court held the actions of FmHA to be in violation of the automatic stay. This court finds that in this regard the bankruptcy court's decision was consistent with the above mentioned authority of *Norton* and *Reynolds* and therefore, the bankruptcy court's ruling on that point is correct.

In order to establish a right to setoff under section 533, the following requirements must first be met:

1. A debt owed by the creditor to the debtor arose prior to the commencement of the bankruptcy case;

2. A claim of the creditor against the debtor arose prior to the commencement of the bankruptcy case; and

3. The debt and claim are mutual obligations.

*In re Brooks Farms*, 70 B.R. 368, 371 (Bankr.E.D.Wis.1987). Ketelsens argue that the income tax refund was owed by the IRS, a division of the Department of Treasury, while the debt owed by the Ketelsens was an obligation to FmHA, a division of the Department of Agriculture. Ketelsens cite *In re Rinehart*, 76 B.R. 746 (Bankr.D.S.D.1987) in support of its position that the mere fact that the IRS and FmHA are both government entities does not give rise to mutuality.

In *Rinehart*, the bankruptcy court held that the Small Business Administration did not have the right to offset its pre-petition claims against the debtors' ASCS–CCC farm program payments. *Id.* at 754. Although the ASCS–CCC payments were to be received postfiling, the bankruptcy court held that both the ASCS–CCC debt and

---

**9.** 11 U.S.C. § 362(d) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

SBA claims had arisen prefiling. *Id.* at 750. The court noted that for debts to be "mutual," they must be in the same right and between the same parties standing in the same capacity. *Id.* at 750, *quoting* 4 *Collier on Bankruptcy,* § 553.04[2] (other citations omitted). Because the SBA and ASCS–CCC were different departments, managed and supervised by different administrators and because both agencies had budgets which were in no way related to one another, the court found that they did not stand in the same capacity for purposes of setoff. *Id.* at 754.

*Rinehart* appears to be the only case in which a discussion of mutuality between different governmental agencies has been raised. Accordingly, this Court does not find it all encompassing on the issue of mutuality—especially under the facts of this case. The Court is mindful of 26 U.S.C. § 6402, *supra,* which does indicate an intention on the part of Congress to affirm the procedure of one federal agency (in this case FmHA) offsetting against an obligation an amount owed by another federal agency (IRS). This Court's discussion recognizes that FmHA did violate the automatic stay by applying the debtors' tax refund. The discussion of mutuality is important in this case insofar as it relates to the claim of a set of rights by FmHA as that claim impacts on the issue of whether the conduct was so egregious as to merit the imposition of punitive damages. As will be discussed later in this opinion, FmHA applied the offset in the good faith belief that it had a claim of right to the proceeds of the debtors' tax refund. 26 U.S.C. § 6402 affords such a right and, as early as October 14, 1986, the FmHA sent the debtors a letter consistent with the belief that an offset could be obtained. In that respect, mutuality is important only as to the issue of punitive damages. Because the law surrounding mutuality of debts and the application of the offset provisions of 26 U.S.C. § 6402 after a stay in bankruptcy was not clearly established, this Court does not find that the circumstances of this case were appropriate for an award of punitive damages.

ISSUE NO. 2

WHETHER THE BANKRUPTCY COURT ERRED IN FAILING TO APPLY THE PROVISIONS OF 11 U.S.C. § 505(a)(2)(B).

■ 11 U.S.C. § 505(a) provides:

(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested, before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) The amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or

(B) Any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) A determination by such governmental unit of such request.

FmHA asserts that the debtors' attorney made the debtors' first formal request of a return of the tax refund in a letter dated May 5, 1987. The bankruptcy court's decision respecting the tax refund was announced at the culmination of the trial on August 24, 1987. FmHA computes the length of time between the debtors' formal request and the bankruptcy court's determination as being 111 days—nine days too soon under the mandate of 11 U.S.C. § 505(a)(2)(B)(i).

Ketelsens argue that 11 U.S.C. § 505(a)(2)(B) is written in the disjunctive; that the bankruptcy court may determine the right of an estate to a tax refund as soon as *either* 120 days have passed since the trustee made a proper request of the refund, *or* the governmental unit has made a determination on the refund request. (Emphasis added.) Ketelsens assert that

the IRS notice of April 6, 1987, informing them that a portion of their tax refund had been applied against their FmHA loan was a "determination by such governmental unit of such request." 11 U.S.C. § 505(a)(2)(B)(ii).

FmHA has failed to address Ketelsens' assertion that the IRS notice of April 6, 1987, satisfies the determination requirement of 11 U.S.C. § 505(a)(2)(B)(ii). The April 6, 1987, notice specified that, "We [IRS] have applied all or part of your overpayment of tax to fully or partially satisfy a past due obligation referred to us by another governmental agency." Ketelsens were further informed that the referring agency was the Farmers Home Administration of the Department of Agriculture. This Court finds that the April 6, 1987, notice is sufficient evidence of the fact that "a determination by such governmental unit" had in fact been made. It is difficult for this Court to imagine a more clear and concise method of advising the debtors that FmHA, by and through the IRS, had applied the tax refund to the debtors' obligation. Accordingly, the bankruptcy court did not err in the application of 11 U.S.C. § 505.

## ISSUE NO. 3

### WHETHER THE BANKRUPTCY COURT ERRED IN PROCEEDING WITH THIS CASE AS THERE HAD BEEN NO EXHAUSTION OF ADMINISTRATIVE REMEDIES.

■ FmHA argues that 26 U.S.C. § 6402(d) and (e) limit the jurisdiction of courts to review IRS offset matters and that the bankruptcy court erroneously considered this matter as there had been no exhaustion of administrative remedies.

26 U.S.C. § 6402 generally provides that in case of an overpayment by a taxpayer, such overpayment can be applied to a past due legally enforceable debt owed by the taxpayer to a federal agency. As noted earlier, this procedure of offset is subject to the automatic stay provisions outlined in section 362 of the Bankruptcy Code. With respect to judicial review of the reduction of such debts, 26 U.S.C. § 6402(e) provides:

No court of the United States shall have jurisdiction to hear any action, whether legal or equitable, brought to restrain or review a reduction authorized by subsection (c) or (d). No such reduction shall be subject to review by the Secretary in an administrative proceeding. No action brought against the United States to recover the amount of any such reduction shall be considered to be a suit for refund of tax. *This subsection does not preclude any legal, equitable, or administrative action against the federal agency to which the amount of such reduction was paid.*

26 U.S.C. § 6402(e) (emphasis added).

FmHA has argued that Ketelsens should have exhausted administrative remedies with respect to their refund. However, FmHA has not provided this Court with any authority as to what those administrative remedies might be. Furthermore, the cases cited by FmHA do not involve a federal agency setoff of a past due debt during the course of an automatic stay in bankruptcy, but instead only point to the general rule that available administrative remedies should be exhausted.[10] FmHA's

---

10. FmHA cited the following cases: *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (Supreme Court held that a "final decision" pursuant to 405(g) of the Social Security Act had been made at the administrative level and therefore, decision was subject to judicial review); *Myers v. Bethelehem Ship Building Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed.2d 638 (1938) (National Labor Relations Act provided that the exhaustion of certain administrative procedures would be exclusive and therefore, district court did not have equity jurisdiction to enjoin the NLRB from holding a hearing upon the complaint filed by it against an employer alleged to be engaged in unfair labor practices prohibited by the Act); *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (Supreme Court held that a registrant's failure to appeal his classification and failure to report for his pre-induction physical as required by the Selective Service Act, did not bar a challenge to the validity of his classification as a defense to his criminal prosecution); *Red River Transport & Development Co., Inc. v. Federal Aviation Administration,* 630 F.2d 592 (8th Cir. 1980) (court held that because a "final order" had not been issued by the FAA as required by statute, the district court was correct in dismissing a plaintiff's claim for lack of jurisdiction).

argument must fail. By its terms, 28 U.S.C. § 6402(e) "does not preclude any legal ... action against the federal agency to which the amount of such reduction was paid." This case is clearly a suit against the FmHA—the agency to which the reduction was paid—and therefore, the bankruptcy court properly entertained jurisdiction over the matter.

## ISSUE NO. 4

### WHETHER THE EVIDENCE SUPPORTED AN AWARD OF ACTUAL DAMAGES.

■ The bankruptcy court awarded Ketelsens $1,100 in actual damages. This amount represented the damages flowing from Ketelsens' being unable to plant and harvest 80 acres of oats.

Two arguments have been raised by FmHA in an effort to strike the award of actual damages. First, FmHA contends that it was mathematically impossible for the bankruptcy court to arrive at the 80 acre figure. FmHA supports its position, arguing that of approximately 200 acres of available farmland, 192.2 acres were either planted or set aside as evidenced by the ASCS figures in evidence. FmHA concludes that the remaining available land could not have produced an amount large enough to justify an award of $1,100. Second, the provisions of the debtors' confirmed plan of reorganization reveal that the debtors' attorney's fees of $2,500 incurred during the course of the bankruptcy proceedings were to be paid in part from the debtors' tax refund. Accordingly, FmHA contends that because the tax refund would not have been used for planting but instead used to pay attorney's fees, the bankruptcy court was erroneous in awarding actual damages.

A review of the trial transcript reveals a number of contradictions. Ketelsens asserted that as a result of not having their tax refund available for the purchase of seed, they were unable to plant oats. These oats were to be either harvested or cut for hay. A certain portion of the land involved was left as summer fallow. According to the debtors, this land would

have been planted with oats having a yield of approximately 35 bushels per acre at a $1.25 per bushel. However, FmHA asserts that the land in question would have been subject to the ASCS program and that the debtor had planted all the crops he had intended to plant.

Another contradiction exists with respect to the number of acres which Ketelsens would have planted had they been able to do so. At one point, the testimony indicates 62 acres. At another point in the testimony, the figure of 80 acres emerges. The bankruptcy court found that Ketelsens had suffered $1,100 in actual damages for not having been able to plant 80 acres of oats. However, the testimony does not support the $1,100 figure. At the yield and price of oats in evidence, an appropriate figure would have been $3,500. The bankruptcy court did not indicate its reasons behind the $1,100 figure, nor does any evidence in the record support that figure.

The final and perhaps most contradictory evidence surrounds the confirmed plan of the bankrupts. Before the planting of any crops for 1987, the debtors submitted their Chapter 12 plan dated December 29, 1987. As one of their obligations, the debtors listed attorney's fees in the amount of $2,500. This amount was to be paid prior to April 1, 1987, from funds received as ASCS and tax refunds due the debtor. To say that the tax refund was to be used for the planting of an oat crop in the spring of 1987 is in direct contravention with the plan signed and submitted by the debtors.

This Court finds that the evidence in this case did not support a finding of $1,100 in actual damages. In this regard, the finding of the bankruptcy court was clearly erroneous. Accordingly, the award of $1,100 in actual damages will be reversed.

## ISSUE NO. 5

### WHETHER AN AWARD OF PUNITIVE DAMAGES WAS ERRONEOUS.

FmHA's argument respecting the bankruptcy court's award of punitive damages is two-pronged. First, FmHA argues that

because there does not exist an unequivocally expressed waiver of the government's sovereign immunity in this case, punitive damages were improper. Second, FmHA argues that the facts presented did not warrant an "appropriate circumstance" for an award of punitive damages pursuant to 11 U.S.C. § 362(h).

### A. Sovereign Immunity

■ This Court recognizes the well-established rule that the United States, as sovereign, "is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) *quoting United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). With respect to a claim for entitlement to money damages, such an entitlement "depends upon whether any federal statute can be fairly interpreted as mandating compensation by the federal government for the damage sustained." *Testan*, 424 U.S. at 400, 96 S.Ct. at 954 (other citations omitted). Therefore, "in a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity...." *Id.*

It is the position of the Ketelsens that Congress has expressed its intention to waive sovereign immunity as evidenced in 11 U.S.C. § 106 and 11 U.S.C. § 362(h). FmHA argues that those sections do not lend themselves to an interpretation that affirmative money damages are awardable against the government in this case.

11 U.S.C. § 106 provides:

### § 106. Waiver of sovereign immunity

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. § 362(h) provides:

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

As stated in *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980):

We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.

The "plain language" rule of construction was adopted by the court in *In re Davis*, 20 B.R. 519 (Bankr.M.D.Ga.1982). In *Davis* the court construed each subsection of 11 U.S.C. § 106 in the context of whether the government had waived its sovereign immunity. The court stated:

The plain language of section 106(a) as applied to this adversary proceeding is that Congress deemed the sovereign immunity of a governmental unit to have been waived when (1) the estate has a claim against a governmental unit and the governmental unit has a claim against the estate; (2) the claim against the governmental unit must be property of the estate; and (3) the claims of each must arise out of the same transaction or occurrence.

20 B.R. at 521.

The plain language of section 106(b) is that any claim which is property of the

estate shall be offset against the allowed claim of a governmental unit, and Congress, as to the offset, waived any defense of sovereign immunity that otherwise might be available to the governmental unit.

*Id.*

Applying the plain language test, it is mandatory in 106(c) before there is a waiver of sovereign immunity, that (1) the proceeding be brought under a provision of Title 11 and (2) that the provision of Title 11 contain the word "creditor" or the word "entity" or the word "governmental unit."

20 B.R. at 521–22.

Applying the plain language of section 106 to the facts of this case, this court finds that FmHA is not immune. With respect to 106(a), the facts of this case give rise to a waiver of sovereign immunity. First, the Ketelsens' estate brought suit against FmHA for violating the automatic stay and FmHA had previously filed its proof of claim against the estate. Second, the claim of Ketelsens sought a return of the IRS income tax refund which was property of the estate. Third, the claims of both parties arose out of the same transaction—that being the application of the refund against the Ketelsens' obligation to FmHA. Applying section 106(a), FmHA waived its sovereign immunity.

The sole purpose of section 106(b) is to create a partial waiver of the sovereign immunity of a government. *In re Braniff Airways, Inc.*, 42 B.R. 443, 450 (Bankr.N. D.Tex.1984). The waiver is limited to the amount of the governmental unit's claim and is triggered only when the governmental unit files a claim. *Id.* In this case, the FmHA filed its claim in the amount of $270,391.95. Applying section 106(b), FmHA waived its sovereign immunity at least to the extent of $270,391.95.

Where Title 11 deals with "creditor, entity, or governmental unit," eleventh amendment sovereign immunity is waived under section 106(c). *See In re Prime, Inc.*, 44 B.R. 924, 927 (Bankr.W.D.Mo.1984). Here, the Ketelsens sued under section 362 which

"operates as a stay, applicable to all entities." 11 U.S.C. § 362(a). Furthermore, section 362(h) specifically provides that "in appropriate circumstances" an individual injured by a willful violation of the automatic stay is entitled to punitive damages. Applying the plain language rule of construction, it is difficult for this Court to imagine a clearer expression by Congress of an intention to award punitive damages against an entity subject to the provisions of the automatic stay. As discussed earlier, FmHA was clearly subject to the automatic stay. Furthermore, the plain language of section 106(a), (b), and (c) indicates that FmHA has waived its sovereign immunity. Accordingly, an award of punitive damages would be awardable if there existed "appropriate circumstances."

**B. Appropriate Circumstances.**

█ Prior to the enactment of 11 U.S.C. § 362(h),[11] the remedy of civil contempt was often invoked upon the finding of a violation of the automatic stay. *In re Wagner*, 74 B.R. 898, 902 (Bankr.E.D.Pa. 1987) citing Kennedy, *The Automatic Stay in Bankruptcy*, 11 U.Mich.J.L.Reform, 177, 259–66 (1977). In order for a party to be held in civil contempt, courts are required to find that the party violated a specific and definite court order and that the party has knowledge of the order sufficient to put him on notice of the prescribed conduct. *Wagner* at 902 (other citations omitted). Section 362(h) provides for recovery of actual damages, attorney's fees, costs, and, where appropriate, punitive damages for a "willful" violation of the automatic stay. Although the precise reason for the enactment of subsection (h) is not clear, (*see* 2 *Collier on Bankruptcy*, § 362.12 at 362–74), it does appear that it was meant to supplement, not replace, the civil contempt remedy. *Wagner* at 902, citing 130 Cong.Rec. H1942 (daily ed. March 26, 1984).

█ A stay violation is willful when a party acts with knowledge of the filing of bankruptcy. *In re Santa Rosa Truckstop*,

11. Bankruptcy Amendments and Federal Judge- ship Act of 1984, Pub.L. No. 98–353.

*Inc.,* 74 B.R. 641 (Bankr.N.D.Fla.1987), citing *In re Shafer,* 63 B.R. 194 (Bankr.D. Kan.1986). There is no question in this case that FmHA acted with knowledge that Ketelsens had filed their petition. FmHA received notice of the pending bankruptcy on January 13, 1987. Later, it filed its claim against the estate and went on to participate in the confirmation of Ketelsens' Chapter 12 plan. However, the element of willfulness is not the sole element which must be satisfied to sustain the award of punitive damages. In addition, the statute requires "appropriate circumstances." FmHA argues that appropriate circumstances did not exist as its conduct cannot be characterized as outrageous or demonstrating a gross disregard for others.

■ The case law surrounding the application of section 362(h) respecting punitive damages is limited. *See 2 Collier on Bankruptcy,* § 362.12. Accordingly, the meaning of "appropriate circumstances" in the context of a punitive damage award and the application of that term to a given set of facts is somewhat nebulous. However, it is fair to say that in cases where punitive damages were awarded under section 362(h), the acts of the violating party were more than "willful." Willfulness in the context of punitive damages connotes a higher state of mind standard. *Wagner* at 902.

In *Budget Service Co. v. Better Homes of Virginia,* 804 F.2d 289 (4th Cir.1986), the Fourth Circuit Court of Appeals affirmed an award of punitive damages under a factual scenario involving a creditor's resort to self help in reclaiming three vehicles the debtor had leased from the creditor. The creditor was a corporation engaged in the business of car leasing. The facts showed that an employee of the debtor was injured as a result of the creditor's attempt to drive one of the vehicles from the debtor's place of business. *Id.* at 291. An attempt to remove the remaining two vehicles was made by the president of the creditor corporation who was accompanied by two men—one of whom carried a firearm. *Id.* Because the creditor knew of

the pending petition in bankruptcy and intentionally attempted to repossess the vehicles in spite of the stay in bankruptcy, the bankruptcy court award of punitive damages was affirmed by the court of appeals. *Id.* at 293. *See also Tel–A–Communications Consultants, Inc.,* 50 B.R. 250, 255 (Bankr.D.Conn.1985) (punitive damages awarded for repossession of debtor's automobile in violation of stay which court characterized as not only willful, but also with arogant defiance of federal law); *In re Mercer,* 48 B.R. 562 (Bankr.D.Minn. 1985) (debtor recovered punitive damages where employees of creditor kicked in debtor's back door, scaring the debtor's children effectuating a repossession of debtor's leased stereo); *In re LaTempa,* 58 Bankr. 538 (Bankr.W.D.Va.1986) (repossession of vehicle in violation of automatic stay); *In re Bragg;* 56 B.R. 46 (Bankr.M. D.Ala.1985).

The notion that willfulness in the context of punitive damages requires a higher state of mind standard was explored in *In re Wagner.* In *Wagner,* the court was guided by a civil rights case in which an award of punitive damages was discussed. *Wagner,* 74 B.R. at 903–04 (applying *Cochetti v. Desmond,* 572 F.2d 102 (3d Cir.1978) a case decided under 42 U.S.C. § 1983). The court stated:

> In *Cochetti,* the Third Circuit observed that punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are "reserved ... for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." (Citation omitted). To recover punitive damages, the defendant must have acted with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so.

*Wagner,* 74 B.R. 903–04, *see also In Re Whitt,* 79 B.R. 611, 615–16 (Bankr.E.D.Pa. 1987).

The Eighth Circuit has noted that the purpose of punitive damages is fundamentally different from the purpose of compen-

satory damages; the former serves to punish the defendant and to deter both the defendant and others from engaging in similar conduct in the future. *Kerr v. First Commodity Credit Corp.*, 735 F.2d 281, 289 (8th Cir.1984). Both the degree of malice and the financial wealth of the defendant are relevant in determining the amount of punitive damages. *Id.*, citing *Armstrong v. Republic Realty Mortgage Corp.*, 631 F.2d 1344, 1351–52 (8th Cir. 1980). In South Dakota, punitive damages are proper "where the defendant has been guilty of oppression, fraud, or malice, actual or presumed." SDCL 21–3–2. *See also Federal Jury Practice and Instructions,* Devitt, Blackmar & Wolf, § 85.19. In *Hannahs v. Noah*, 83 S.D. 296, 158 N.W.2d 678 (1959), the South Dakota Supreme Court observed:

> As a general rule, exemplary damages are recoverable in all actions for damages based upon tortious acts which involve circumstances or ingredients of malice, fraud, or insult, or a wanton and reckless disregard for the rights of the plaintiff.

*Id., see also Smith v. Montana–Dakota Utilities*, 575 F.Supp. 265, 266 (Bankr.D.S. D.1983) (punitive damages recoverable in South Dakota based upon proof of conduct that indicates a wanton and reckless disregard of plaintiff's rights).

After reviewing the entire record on appeal this Court finds that the evidence presented did not rise to a level consistent with an award for punitive damages. This Court's discussion of law surrounding the application of sections 553 and 362 to the facts of this case is evidence of the fact that the law surrounding the issue of offset is not clearly established. In other words, although the FmHA had violated the stay, it was doing so with a belief that its actions were consistent with the law surrounding offset. This Court finds that FmHA's position was not taken in an oppressive or fraudulent manner. Accordingly, this Court holds that the bankruptcy court's award of punitive damages under the facts presented was clearly erroneous.

## CONCLUSION

The record supports the bankruptcy court's finding that FmHA willfully violated the automatic stay in bankruptcy. However, this Court concludes that the circumstances of the case were not appropriate for an award of punitive damages. In addition, this Court finds that the record does not adequately support the bankruptcy court's award of $1,100 in actual damages. Accordingly, the bankruptcy court's award of both punitive and actual damages will be reversed. Because the record supports the finding that FmHA's actions were willful, the award of attorney's fees and costs will be upheld.

An order consistent with this opinion will be filed.